## FIFTH DIVISION
## MCFADDEN, C. J.,
## RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 9, 2021**

# In the Court of Appeals of Georgia

A21A0104. MONTGOMERY v. THE TRAVELERS HOME AND MARINE INSURANCE COMPANY.

MCFADDEN, Chief Judge.

This appeal concerns whether an insurance company is entitled to summary judgment on an insured's claim for penalties under OCGA § 33-4-6 for bad faith failure to pay. The Travelers Home and Marine Insurance Company argues that its denial of Mary Agnes Montgomery's claim for water damage to her basement was not in bad faith because it based the denial on a structural engineer's advice that the damage was caused by ground water, which was excluded from coverage under Montgomery's policy. Montgomery argues that both the investigation done by Travelers's claims adjustor and the analysis of the structural engineer were flawed.

As detailed below, factual disputes exist as to whether the damage was, in fact, caused by ground water and thus excluded from coverage, and those factual disputes create jury issues regarding whether Travelers is liable to Montgomery under the policy. But that is a distinct question from the one before us: whether Travelers acted in bad faith in denying Montgomery's claim. Indeed, the existence of factual disputes regarding policy coverage *supports* Travelers's argument that it is entitled to summary judgment on the bad faith claims, and Montgomery has pointed to no evidence that the structural engineer's advice was patently wrong or that Travelers's reliance upon it was merely pretextual. So we affirm the trial court's grant of partial summary judgment on Montgomery's claims for penalties, including attorney fees, under OCGA § 33-4-6.

1. *Facts and procedural history.*

Summary judgment is appropriate when the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" OCGA § 9-11-56 (c). A defendant seeking summary judgment may demonstrate this

> by either presenting evidence negating an essential element of the
> plaintiff's claims or establishing from the record an absence of evidence

2

to support such claims. . . . Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted). "On appeal from a grant of summary judgment, this [c]ourt conducts a de novo review of the record, construing the evidence and all reasonable inferences therefrom in the light most favorabl[e] to the nonmoving party." *Auto-Owners Ins. Co. v. Hale Haven Properties*, 346 Ga. App. 39, 40 (815 SE2d 574) (2018) (citation and punctuation omitted).

So viewed, the evidence showed that Montgomery had a homeowners insurance policy with Travelers. Pertinently, the terms of the policy excluded from coverage damage caused by "surface water," "ground water," and "water or water borne material located below the surface of the ground including water or water borne material . . . [w]hich exerts pressure on, seeps, leaks or flows into . . . [a]ny part of the dwelling or other structures; [or t]he foundation of the dwelling or other structures[.]"

In early June 2017, Montgomery made a claim under her policy for water damage to her basement that she asserted had been caused by a single event involving a ruptured garden hose. A Travelers's claims adjustor, Bert Trapp, inspected the

3

property two days later and saw damage that appeared to him to be from ground water rather than the ruptured hose. On June 13, Trapp sent Montgomery a letter stating that Travelers had been "unable to determine whether [the] claim [was] covered under [the] policy based on the information available to [Travelers] at [that] time" and that "research [was] ongoing to determine whether coverage [was] provided by [the] policy."

Trapp sought input from his supervisor, who suggested that he hire an independent engineer to determine the cause of the water damage. Travelers retained a structural engineer, who inspected the property on July 5, 2017. The structural engineer observed conditions on several basement walls that indicated moisture had seeped into the basement from the ground outside over a period of time. In his view, the conditions he saw — such as elevated moisture readings, particular types of water stains, and fungal growth — were inconsistent with a single exposure to moisture from a ruptured garden hose. The structural engineer opined that, based on his "personal observations, information available to him, and [his] training, knowledge, and experience . . . that migration of groundwater through breaches in the concrete masonry unit block foundation walls and slab-on-grade, resulted in the water damage

4

[in various places in the basement]. The broken garden hose is not the cause." He issued a written report to Travelers detailing his findings.

Based on the structural engineer's report and his own investigation, Trapp determined that the claimed damage was due to ground water. He informed Montgomery in a July 20, 2017 letter that Travelers was denying her claim. In that letter he stated:

> You presented a claim for water damage to your basement. We inspected the damages with ProNet Group Inc. [the company for which the structural engineer worked] on 07/05/2017. Our research found that ground and surface water is responsible for the moisture damage in the basement area. Since ground/surface water is not a covered peril, your policy does not provide coverage.

Montgomery sent Travelers a letter challenging the denial of her claim. She criticized two aspects of the structural engineer's work. She claimed that he had focused on the cause of pre-existing moisture damage for which she was not making a claim instead of looking at the cause of the "excessive amount of water that caused damage to [her] basement from the ruptured water hose." She also claimed that his conclusions were inconsistent with the amount of rain that had occurred at that time, and she attached to her letter weather data for the month of June 2017.

5

After reviewing Montgomery's letter, the structural engineer disputed her contentions in an email to Trapp. The structural engineer stated that he had considered Montgomery's assertion that the reported damage was based on a ruptured hose, he pointed to places in which he reiterated his conclusion that the water damage reported by Montgomery was "not related to the reported broken water hose," and he pointed to places in his report showing his work and reasoning on that point. The structural engineer also stated that the volume of rain at the time was only one of several factors contributing to ground water intrusion. He concluded his email to Trapp with the following: "There is no new information provided in the rebuttal response letter issued by [Montgomery] that alters the CONCLUSIONS as stated in our REPORT OF FINDINGS dated July 17, 2017."

When Travelers did not change its decision to deny her claim, Montgomery then brought an action for breach of contract, statutory penalties under OCGA § 33-4-6 for bad faith failure to pay her claim, and attorney fees. Travelers moved for partial summary judgment on the claims for bad faith penalties and attorney fees. The trial court granted Travelers's motion for partial summary judgment, and Montgomery appeals. She argues that the trial court used an improper standard in ruling on the summary judgment motion; that Travelers was not entitled to summary judgment on

6

the bad faith claim based on the structural engineer's report; and that Travelers was not entitled to summary judgment on the claim for attorney fees. As detailed below, we find no merit in any of these claims.

2. *Trial court's alleged use of an improper standard.*

Montgomery argues that we should reverse the grant of partial summary judgment because the trial court erroneously required her to "prove" the existence of an issue of material fact and did not review the evidence in the light most favorable to her. We do not read the trial court's order in this way. But even if we assume for the sake of argument that the trial court's analysis was flawed, that would not require reversal. We perform our own analysis. Our "de novo standard of review advances judicial economy by recognizing that, in summary judgment cases, the factual record is set and the appellate courts can, as well as the trial courts, apply those facts to the law." *City of Gainesville v. Dodd*, 275 Ga. 834, 838 (573 SE2d 369) (2002).

3. *Bad faith failure to pay claim under OCGA § 33-4-6.*

Montgomery brought a claim for bad faith failure to pay under OCGA § 33-4-6. As detailed below, the trial court did not err in granting summary judgment to Travelers on this claim, because Travelers presented evidence that it denied the claim based on the advice of the structural engineer and Montgomery has not presented

7

evidence from which a jury could find that the structural engineer's advice was patently wrong or that Traveler used it as a pretext to deny the claim. And we find no merit in Montgomery's challenges to the admissibility of the structural engineer's report on summary judgment.

(a) *Applicable law.*

OCGA § 33-4-6 provides a means for an insured to recover bad faith penalties against an insurer. It pertinently provides:

> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

OCGA § 33-4-6 (a).

In Georgia, penalties against an insurer for bad faith denial of a claim under OCGA § 33-4-6

> are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact [on the question of liability under the policy]. Ordinarily, the

question of bad faith is one for the jury. However, when there is no evidence of unfounded reason for the nonpayment, *or* if the question of liability is close, the court should disallow imposition of bad faith penalties. This rule applies even if genuine issues of fact exist with regard to whether the insurer's conduct in denying the claim, in part, may have been based on bad faith.

*Lee v. Mercury Ins. Co. of Ga.*, 343 Ga. App. 729, 748 (4) (808 SE2d 116) (2017) (citations and punctuation omitted; emphasis in original). See also *Neal v. Superior Ins. Co.*, 208 Ga. App. 827 (432 SE2d 253) (1993) (an insurer is entitled to summary judgment on a claim under OCGA § 33-4-6 if it "present[s] a defense that was reasonable as a matter of law"); *Rice v. State Farm Fire & Cas. Co.*, 208 Ga. App. 166, 169 (1) (430 SE2d 75) (1993) (an insurer is entitled to summary judgment on a claim under OCGA § 33-4-6 if a factual dispute exists on the underlying merits of the insurance claim).

Under this rule, we will affirm the trial court's grant of summary judgment to the insurer on the issue of bad faith unless there is evidence that the insurer "had *no* reasonable grounds to contest [the insured's] claim [under the policy.]" *Lee*, 343 Ga. App. at 749 (4) (emphasis in original).

9

The advice of an independent consultant may provide an insurer with a reasonable ground to contest an insured's claim under the policy, entitling the insurer to summary judgment on a claim for bad faith penalties. As a matter of law, it is reasonable for an insurer to deny a claim based on such advice unless the advice is patently wrong and the error was timely brought to the insurer's attention, *Haezebrouck v. State Farm Mut. Automobile Ins. Co.*, 216 Ga. App. 809, 811 (3) (455 SE2d 842) (1995), or unless the advice is "in the nature of mere pretext for an insurer's unwarranted prior decision to [deny the claim]." *Wallace v. State Farm Fire & Cas. Co.*, 247 Ga. App. 95, 97 n. 6 (539 SE2d 509) (2000).

Montgomery appears to dispute this legal principle. She states in her appellate brief that the question of "[w]hether an insurer's reliance on an expert or independent consultant is in good faith is generally an issue for the jury." But she offers no authority to support that proposition. Instead she cites a decision that did not involve reliance upon an expert or independent consultant. She cites *R&G Investments & Holdings v. American Family Ins. Co.*, 337 Ga. App. 588, 600 (5) (787 SE2d 765) (2016) for the general proposition that "whether the insurer acted in good or bad faith is normally for the jury."

10

Montgomery also argues in her appellate brief that language in OCGA § 33-4-6 (a) should be construed in a way that contradicts the holding in *Haezebrouck*, 216 Ga. App. at 811 (3), that as a matter of law it is reasonable in most cases for an insurer to deny a claim based on the advice of an independent consultant. She points to language stating that "the testimony or opinion of an expert witness [shall not] be the sole basis for a summary judgment . . . on the issue of bad faith." OCGA § 33-4-6 (a). But that language is not inconsistent with the *Haezebrouck* holding. The statutory language pertains to a *trial court's* basis for granting summary judgment on a bad faith claim brought under the statute, not an *insurer's* basis for its decision to deny a claim under a policy. In her arguments on appeal, Montgomery conflates these two concepts.

The grant of summary judgment in this case does not rest solely on the opinion testimony of an expert witness. The actual merits of the structural engineer's advice — whether he was right or wrong in his determination that ground water caused the damage — is not dispositive of Montgomery's claim for bad faith penalties. Instead, what matters to her claim for bad faith penalties is whether Travelers actually based its decision on the structural engineer's advice, as opposed to using the advice as a pretext, and whether that advice was patently wrong. Because there is evidence on

those issues beyond merely the structural engineer's report — for instance, the testimony of Travelers's adjustor, Bert Trapp — Montgomery's assertion that the summary judgment in this case was based solely on an expert opinion is simply incorrect.

By pointing to evidence that it had denied the claim based on the advice of the structural engineer that the damage reported by Montgomery was due to ground water, Travelers discharged its burden on summary judgment of "either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims." *Cowart*, 287 Ga. at 623 (1). This meant that, to avoid summary judgment, Montgomery could no longer "rest on [her] pleadings, but rather [was required to] point to specific evidence giving rise to a triable issue[,]" id. (citation and punctuation omitted), meaning evidence either that the structural engineer's opinion was either patently wrong, see *Haezebrouck*, 216 Ga. App. at 811 (3), or a pretext for Travelers to deny the claim, see *Wallace*, 247 Ga. App. at 97 n. 6.

(b) *Evidence that the advice was patently wrong.*

Montgomery has pointed to no evidence that the structural engineer's advice was patently wrong. To be patently wrong is to be obviously or apparently wrong. See

12

Black's Law Dictionary (11th ed. 2019) (defining "patent" to mean obvious or apparent). But Montgomery's criticisms of the structural engineer's advice, and the evidence she cites in support of those criticisms, do not demonstrate that the advice was obviously or apparently wrong; they merely raise a factual question concerning whether *or not* the advice was wrong. For example, Montgomery argued that the rainfall data she attached to her rebuttal letter to Travelers undercuts the structural engineer's conclusion that ground water caused the damage to her basement. The structural engineer disagreed. A factfinder addressing the underlying issue of Montgomery's coverage under the policy might agree with Montgomery and discredit the structural engineer's conclusions, or the factfinder might believe the structural engineer.

The existence of such a factual question would preclude summary judgment on Montgomery's underlying claim of liability under the policy. But it does not preclude summary judgment on her claim for bad faith penalties; instead, it supports the grant of summary judgment on the bad faith claim, because an insurance company has reasonable grounds to contest a claim where "factual issues regarding the merits of [the] claim are in genuine conflict[.]" *Rice*, 208 Ga. App. at 169 (1). See *Moon v. Mercury Ins. Co. of Ga.*, 253 Ga. App. 506, 507-509 (2) (559 SE2d 532) (2002). The

13

existence of a factual dispute on the underlying merits of Montgomery's insurance claim "causes there to be *no* conflict, as a matter of law, [regarding] whether [Travelers] had reasonable grounds to contest [the] claim." *Rice*, supra (emphasis supplied).

(c) *Evidence that the advice was used as pretext.*

Montgomery also has not pointed to evidence that Travelers had already decided to deny her claim and was using the structural engineer's advice as mere pretext for that decision. Travelers's adjustor, Trapp, testified to the contrary. And the evidence that Montgomery cites — Travelers's responses to the "Statement of Additional Material Facts" she filed in opposition to summary judgment — does not dispute Trapp's testimony. That evidence merely focuses on perceived flaws and weaknesses in the investigations conducted by Trapp and the structural engineer, issues relevant to whether their conclusions about the source of the water were right or wrong, not whether their investigations were pretext for a foregone decision. In any event, where, as here, "the question of liability is close, the court should disallow imposition of bad faith penalties[,] . . . even if genuine issues of fact exist with regard to whether the insurer's conduct in denying the claim, in part, may have been based upon bad faith." *Lee*, 343 Ga. App. at 748 (4).

(d) *Admissibility of the structural engineer's report.*

Finally, Montgomery challenges the admissibility of the structural engineer's report, arguing that the structural engineer was not qualified to give expert opinion testimony under OCGA § 24-7-702 and that his written report was hearsay that cannot be considered on summary judgment. See *R&G Investments & Holdings*, 337 Ga. App. at 595-596 (3) (inadmissible evidence should not be considered on summary judgment). Neither argument requires us to disregard the report in deciding whether Travelers was entitled to summary judgment on the claim for bad faith penalties.

At this stage of the proceedings, the structural engineer's written report has limited relevance to the bad faith claim. It is being used to establish a fact — to show what specific advice the structural engineer gave to Trapp. It is not being used as a vehicle for the structural engineer to testify as an expert or to show the truth of the matter asserted in the report, that the damage in this case was in fact caused by ground water. See OCGA § 24-8-801 (c) (defining hearsay as a statement "offered in evidence to prove the truth of the matter asserted"). So its admissibility is not subject to either the rules governing expert testimony or the rules governing hearsay, and Montgomery's challenges to the admissibility of the report do not change our

conclusion that Travelers was entitled to summary judgment on the claim for bad faith penalties.

4. *Attorney fees for stubborn litigiousness.*

Montgomery argues that the trial court erred in granting summary judgment to Travelers on her claim for attorney fees. In her complaint, she asserted this claim on the ground of stubborn litigiousness, without specifying a Code section under which she sought the fees. Because OCGA § 33-4-6 is the exclusive remedy for bad faith denial of benefits, Travelers is entitled to summary judgment on any claim for attorney fees for stubborn litigiousness brought under OCGA § 13-1-11. See *Auto-Owners Ins. Co.*, 346 Ga. App. at 50 (1) (c) (ii); *United Svcs. Automobile Assn. v. Carroll*, 226 Ga. App. 144, 149 (5) (486 SE2d 613) (1997). Indeed, Montgomery expressly withdrew any claim for attorney fees under OCGA § 13-1-11 in her opposition to Travelers's motion for partial summary judgment. And for the reasons discussed in Division 2 above, Montgomery is not entitled to recover under OCGA § 33-4-6, so to the extent she sought attorney fees under that Code section the trial court properly granted summary judgment to Travelers on the claim.

*Judgment affirmed. Rickman, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*